IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL BRYAN and BONNIE BRYAN, )
husband and wife, individually and as )
parents and natural guardians on behalf of )
their minor child, KB and KB, )
)
      Plaintiffs, )
)
v. ) C.A. No. 03-259 Erie
)
ERIE COUNTY OFFICE OF CHILDREN )
& YOUTH, et al., )
)
      Defendants. )

## OPINION

Presently pending before the court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), defendants' brief in support (Docs. 87, 88), plaintiffs response and plaintiffs' brief in opposition (Docs. 92, 93) and defendants' reply thereto (Doc. 97). For the reasons set forth below, the motion to dismiss plaintiffs' claims will be denied.

## I. Background

This action arises out of an alleged sexual assault by J.O., a minor foster child placed in the home of plaintiffs Paul and Bonnie Bryan ("Bryans"). First Amended Complaint ¶ 29. The Bryans are suing individually and as parents and natural guardians of their son, K.B., the victim of the alleged assault. First Amended Complaint ¶ 7. The Bryans were licensed as foster parents through Bethesda Children's Home ("Bethesda"), and with defendant Erie County Office of Children & Youth ("ECOCY"). First Amended Complaint ¶ 17.

ECOCY placed J.O., previously adjudicated as a dependent, in the Bryan's home under the ECOCY's "host family" plan. First Amended Complaint ¶ 23. The initial placement included overnight and weekend visits at the Bryans' home from December 24, 2000 through March 30, 2001. First Amended Complaint ¶ 23. J.O. had previously been placed at Harborcreek Youth Services, a residential and treatment facility for children, through the ECOCY. First Amended

1

Complaint ¶ 20.

On August 12, 2001, the Bryans' son, K.B., then age 9, reported that he had been the victim of certain assaults by J.O., who at the time was 14. First Amended Complaint ¶¶ 26, 29. The next day J.O. was removed from the Bryans' home. First Amended Complaint ¶ 28. Soon thereafter, K.B. disclosed that the assaults by J.O. had begun as early as December, 2000 or January, 2001, and that J.O. had repeatedly committed various sexual and violent acts against him, including anal penetration, while J.O. was having host visits and subsequently, while he lived with the plaintiffs. First Amended Complaint ¶ 29.

Plaintiffs aver that the ECOCY and its employees (collectively, "the ECOCY Defendants") did know or should have known of J.O.'s sexually abusive and violent behavior toward others and that J.O. posed a serious risk of harm to the minor children in the Bryans' home. First Amended Complaint ¶¶ 30-34. Plaintiffs allege that the ECOCY Defendants should have either disclosed their actual knowledge of J.O.'s propensities, or should have investigated J.O.'s history, and they should have warned the Bryans and provided them with a safety plan. First Amended Complaint ¶¶ 35-36. Plaintiffs allege that the ECOCY Defendants failed to meet their obligation to perform risk assessments of J.O. relating to his placement; they allege that in the event those tasks were performed, the ECOCY Defendants deliberately or recklessly disregarded or failed to disclose the information set forth in these assessments to the Plaintiffs. First Amended Complaint ¶ 46. Plaintiffs further allege that the ECOCY Defendants failed to act in accordance with professionally accepted minimum standards when they placed or facilitated the placement of J.O. in the Bryans' home, knowing that young children resided in the Bryans' home, when they knew that J.O. posed a serious risk of sexually abusing or being violent with or to children in that home. First Amended Complaint ¶ 47.

Plaintiffs further allege, in particular, that Defendant Renie Skalko, a caseworker at ECOCY, had knowledge that "J.O. might hurt a child, because he had done so before", and that despite her direct knowledge that J.O. was a danger to other children, and despite knowing that the Bryan home

2

had two smaller children, she lied to Bonnie Bryan telling her that J.O. was a "great kid". First Amended Complaint ¶¶37, 38. Plaintiffs further allege that Renie Skalko removed or approved the removal of statements that indicated that J.O. was a threat, was sexually aggressive, had harmed other children, before giving said written statements to the Bryans. Such statements are alleged to have been removed from a document entitled "Child Health and Educational Data Form," which Ms. Skalko gave to the Bryans. Ms. Skalko allegedly advised the Bryans that the form listed any problems that J.O. had. First Amended Complaint ¶ 39.

In addition, plaintiffs allege that Cindy Baxter, ECOCY co-supervisor, knew that J.O. had sexually hurt a child but nevertheless approved of and assisted in placing him in the Bryans home knowing there was a younger child in that home and then deliberately misrepresented J.O.'s history to the Bryans. First Amended Complaint ¶ 40. Plaintiffs further allege that Renie Skalko and Cindy Baxter engaged in a pattern of conduct designed to hide documents, which would show J.O.'s prior history of sexual conduct and/or violence, in order to place him with the Bryans. First Amended Complaint ¶ 41. Finally, plaintiffs allege that the ECOCY defendants engaged in a policy, practice and custom of deliberately failing to a perform risk assessment of J.O. in order to actively hide information from the Bryans which would have shown that he was a risk to the younger children in the Bryan household. First Amended Complaint ¶ 42.

Plaintiffs Paul and Bonnie Bryan allege that they have suffered various personal injuries as a result of the incident, including, inter alia, severe emotional distress, embarrassment and humiliation, serious psychological and emotional injury, and deprivation of the ability to earn a living. First Amended Complaint ¶ 50. Minor K.B. claims that he has also suffered personal injuries, including, inter alia, serious and sustained bodily injury, serious and sustained psychological and emotional injury, and severe emotional distress. First Amended Complaint ¶ 49.

On September 28, 2006, we dismissed the ECOCY defendants (and other defendants, unnamed in the First Amended Complaint) from all eight counts set forth in the plaintiffs' original Complaint. On August 18, 2008, the United States Court of Appeals for the Third Circuit, without

3

expressing an opinion on the merits of plaintiffs claims, vacated that order so that we could offer plaintiffs leave to amend their original complaint. Plaintiffs had requested leave from the appeals court to file an amended complaint, referencing only their 42 U.S.C. § 1983 claims in the motion.

Accordingly, on remand, we entered an order permitting plaintiffs to amend their complaint. Plaintiffs' First Amended Complaint is the subject of this motion to dismiss.

This First Amended Complaint is less complicated than the original Complaint and names fewer defendants. It sets forth two causes of action. Count I alleges violations of plaintiffs' substantive due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against ECOCY and certain individual employees of ECOCY (defendants Paul Cancilla, Director of Foster Care Placements, Carmen Merritt, Supervisor of Foster Family Care Resources, Renie Skalko, caseworker, Cindy Baxter, caseworker supervisor, Cindy Lewis, caseworker, and employee Brigitte Sullivan). First Amended Complaint ¶¶ 51, 52. Count II alleges, on behalf of K.B. only, intentional infliction of emotional distress against these same defendants. First Amended Complaint ¶¶ 53, 54. Defendant John Petulla, the former Executive Director of ECOCY, was dismissed from this action upon our granting plaintiffs' motion to voluntarily dismiss him from the case. (Doc. 96).

At about the same time this federal action was begun, plaintiffs filed a separate, parallel civil action in the Court of Common Pleas of Crawford County, Pennsylvania. After our original order dismissing the original complaint, we were informed that plaintiffs began to litigate those claims in earnest. These claims include claims for intentional infliction of emotional distress against certain former defendants in this action.

We have jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## II. Standard

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be

drawn from them after construing them in the light most favorable to the non-movant." Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir. 2001); Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In determining whether a claim should be dismissed under Rule 12(b)(6), we may look only to the facts alleged in the complaint and its attachments without reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In considering a motion to dismiss, the court is not deciding the issue of whether a plaintiff will ultimately prevail, but is deciding if the plaintiff is entitled to offer evidence to support its claims. Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997). However, the court is not required to accept as true legal conclusions or unwarranted factual inferences. Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997).

### III. Discussion

Defendants argue that plaintiffs have not stated a cause of action for which relief can be granted with respect to Count I, either under the state created danger theory of liability or the special relationship theory of liability. Defendants also argue that they are entitled to qualified immunity as to these claims. Moreover, as to Count II, defendants argue that K.B.'s claim for intentional infliction of emotional distress is barred by the doctrine of res judicata. Defendants also argue that they are entitled to immunity as to the intentional infliction of emotional distress claim in Count II.

### A. COUNT I: Section 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured ...

42 U.S.C. § 1983. A plaintiff in a section 1983 action bears the threshold burden of proving that "the alleged deprivation was committed by a person acting under color of state law." Mark v.

5

Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). The ECOCY defendants do not contest their status as state actors.

Defendants argue that plaintiffs have not made out an actionable section 1983 claim because plaintiffs only allege failures to act, rather than affirmative acts, as are required under the case law, citing Kaucher v. County of Bucks, 455 F.3d 418, 433 n. 11 (3d Cir. 2006). As we noted in our opinion denying the motion to dismiss the original complaint, the Fourteenth Amendment does not require a state or local government agency to protect its citizens from private violence or other mishaps not attributable to its employees. Deshaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 197 (1989). In DeShaney, the Supreme Court held that in general, the Due Process Clause does not impose a duty upon the state to protect citizens. In DeShaney, a boy (Joshua) and his mother brought suit against social workers and local officials after Joshua was beaten and permanently injured by his father, alleging that his Fourteenth Amendment due process rights were violated by the defendants' failure to remove him from his father's custody. Id. at 191. The defendants had suspected that Joshua was the victim of child abuse and even went so far as to obtain a court order placing Joshua in the temporary custody of a hospital. Id. at 192-93. However, the defendants ultimately returned Joshua to his father's custody, where Joshua was severely beaten. Id. at 193.

In denying plaintiffs' claim, the Supreme Court explained that the Due Process Clause generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. Id. at 196. The Court thus held that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. Id. at 197.

Plaintiffs argued that there was a special relationship between Joshua and the state because the state had taken some steps to protect Joshua from his father, and that as a result of this special relationship, the state acquired a duty to protect Joshua in a reasonably competent fashion. Id. at 197. The Court rejected this argument, concluding that while in certain limited circumstances the

6

Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals, id. at 198, this is only the case when the State takes a person into its custody and holds him there against his will, id. at 199-200. The Court explained that Joshua was not injured while in state custody, but while in the custody of his father. Id. at 201. The Court further explained that the fact that the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Id. Thus, the Court found that the plaintiffs had failed to establish a due process violation. Id. at 203.

The Due Process Clause does not impose an affirmative obligation on the state to protect its citizens; it "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,'" but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." DeShaney, 489 U.S. at 195. It is only when the state takes custody of a citizen, thereby depriving him or her of his or her liberty, that it assumes an affirmative duty to protect him or her from harm Id. at 199. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his on behalf. Id. at 200.

Similarly, plaintiffs herein argue that the defendants, by placing foster children who are in their custody and control, into foster homes, have created a duty to protect those individuals who reside in the foster home. Defendant ECOCY argues that plaintiffs failed to state a §1983 claim under the so-called "special relationship" theory, which "provides that liability can arise under § 1983 for acts committed by private citizens only if the State entered into a special relationship with the plaintiff under which it assumed a duty to ensure the plaintiff's continued well being." Robbins, 802 A.2d at 1248.

Regardless, Plaintiffs have also alleged a claim based upon the "state-created danger" theory

7

announced by the United States Court of Appeals for the Third Circuit in Kneipp v. Tedder, 95 F.3d 1199, 1201 (3d Cir. 1996). In Kneipp, the Court held that "[l]iability can arise under section 1983 for acts committed by private citizens where the state creates the danger or risk of harm that led to the Plaintiff's injury." Id. at 1205-06; Brown v. Commw., Dept. of HEMS Training Institute, 318 F.3d 473 (3d Cir. 2003). A constitutional violation can occur when state authority is affirmatively employed in a manner that injures a citizen or renders him "more vulnerable to injury from another source than he or she would have been in the absence of state intervention." Scheiber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003). This "state-created danger doctrine" has four essential elements:

    1) the harm ultimately caused was foreseeable and fairly direct;

    2) a state actor acted with a degree of culpability that shocks the conscience;

    3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions as opposed to a member of the public in general; and

    4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Bright v. Westmoreland County, et al., 05-2005 (3d Cir. April 4, 2006) at 11-12, citing, inter alia, Kneipp, 95 F. 3d at 1209, n. 22, Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 913 (3d Cir. 1997).

In describing the fourth element, the Third Circuit has emphasized that " '[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.'" Bright v. Westmoreland County, 443 F.3d 276, 282 (3d Cir.2006) (quoting D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1374 (3d Cir.1992) (en banc)). The fourth element also includes a causation requirement: there must be "a direct causal relationship between the affirmative act of the state and plaintiff's

8

harm." Kaucher v. County of Bucks, 455 F.3d 418 (3d Cir. 2006).

In Kneipp, police officers stopped Joseph and Samantha Kneipp on the street for causing a disturbance. Id. at 1201. The couple was walking home from a tavern, and Samantha was extremely intoxicated, to the point that she smelled of urine and was at times unable to walk without Joseph's assistance. Id. The police officers talked to both individuals, and eventually allowed Joseph to go home to relieve a babysitter. Id. at 1201-02. After Joseph left, the police officers let Samantha leave unaccompanied, Id. at 1202; she was later found unconscious at the bottom of an embankment, and ultimately suffered serious brain damage. Id. at 1203. In reviewing Samantha's legal guardians' due process claim, the court concluded that the police officers, in separating Samantha from Joseph and then leaving Samantha to travel home alone, had "made Samantha more vulnerable to harm." Id. at 1209. The court explained:

> It is conceivable that, but for the intervention of the police, Joseph would have continued to escort his wife back to their apartment where she would have been safe. A jury could find that Samantha was in a worse position after the police intervened than she would have been if they had not done so. As a result of the affirmative acts of the police officers, the danger or risk of injury to Samantha was greatly increased.

Id.

In contrast, defendants herein rely on Kaucher, in which a corrections officer and his wife alleged that they contracted a disease due to the prison affirmatively creating dangerous conditions and affirmatively misrepresenting dangers. 455 F.3d at 418. However, the United States Court of Appeals for the Third Circuit rejected these arguments, because "at base, both aspects of their claim allege failures to take actions sufficient to prevent the Kauchers' infections." Id. at 432. The court then reiterated that "failures to act cannot form the basis of a valid § 1983 claim." Id. at 433 n. 11. Further, while the prison did take an affirmative act in distributing a memorandum discussing (and perhaps understating) the degree of infection in the prison, it did not constitute a due process violation because "the memorandum was not the 'but for cause' of the Kauchers' infections"; rather, "[t]here had always been cases of staph infections at the jail." Id. at 434.

We find that plaintiffs have adequately stated a cause of action under § 1983 and will

9

accordingly deny the motion to dismiss. Plaintiffs allege that the defendants intentional acts of lying to the plaintiffs and placing an alleged sexual predator in their home with vulnerable minor children created a danger, and also, that the defendants failed to meet their duty owed to plaintiffs based upon a special relationship created between the parties. Furthermore, plaintiffs have alleged that the defendants affirmative actions, affirmative use of their authority, and policies directly caused their injuries and that defendants were deliberately indifferent to their constitutionally protected rights. First Amended Complaint ¶¶ 43, 48-50.

In addition, we will not dismiss the § 1983 action on the basis of qualified immunity, as requested by defendants, who cite Doe v. County of Centre, PA, 242 F.3d 437, 454 (3d Cir. 2001). Not only would dismissal on this basis be premature, but also, as is discussed more fully infra, we find that the question of immunity is abrogated with respect to individuals when their conduct is willful. Robbins v. CCCYS, 802 A.2d 1239, 1252 (Pa. Commw. 2002). Plaintiffs have alleged that the ECOCY Defendants' conduct was intentional, and that as a direct and proximate result of these acts, the plaintiffs were injured.

### B. Intentional Infliction of Emotional Distress

In Count II, the Bryans allege, on behalf of K.B., a state law claim for intentional infliction of emotional distress against all the defendants. First Amended Complaint ¶¶ 53, 54. Defendants argue that this Count should be dismissed on the grounds of res judicata and on the grounds of immunity. In our prior Opinion, we stated the following:

> While the Bryans concede that ECOCY in its capacity as a local agency would be immune from liability for actions sounding in tort, they contend that the conduct of the individual employees constituted willful misconduct serving to vitiate their immunity. The [Pennsylvania Political Sub-Division Tort Claims Act ("PPSTCA"), 42 Pa. C.S.A. § 8541 et seq.] provides:
>
>> In any action against a local agency or employee thereof for damage on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, *actual malice or willful misconduct*, the provisions of Section 8545 (relating to official liability

10

generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa. C.S. § 8550 (emphasis added). ECOYC argues that its employees are also immune from the intentional torts alleged in this case– intentional infliction of emotional distress, assault and battery, defamation, and conspiracy – because their alleged conduct does not rise to the level of "willful misconduct." The ECOCY Defendants rely on Robbins v. CCCYS, 802 A.2d 1239, 1252 (Pa. Commw. 2002). In Robbins, a minor child and his adoptive parents sued Cumberland County Children and Youth Services and several individually named directors, administrators and caseworkers for failure to protect the child from physical abuse inflicted by his natural mother prior to his placement with them. The Robbins alleged that CYS and several of its employees failed to investigate properly allegations of child abuse. They alleged negligence and intentional infliction of emotional distress. The Robbins court, citing its holding in King v. Breach, 540 A.2d 976, 981 (Pa. Cmwlth. 1988), described the type of behavior which constitutes willful misconduct as follows:

> Willful misconduct, for the purposes of tort law, has been defined by our Supreme Court to mean conduct whereby the actor desired to bring about the result that followed, or at least it was substantially certain to follow, so that such desire can be implied. In other words, the term 'willful misconduct' is synonymous with the term 'intentional tort.'

802 A.2d at 1252-53 (citations omitted). The ECOYC Defendants argue that the plaintiffs have not alleged facts that support a claim that any of the individually named ECOYC employees acted with the specific intent to harm any of the plaintiffs.

\* \* \*

When the allegations in the plaintiffs' complaint are examined, and the reasonable inferences that can be drawn therefrom are made, we find that the complaint does not adequately allege willful misconduct or that the defendants acted with a desire to bring about the result that followed, or at least was substantially certain to follow. The facts and holding in Robbins compel our decision. The abused children in Robbins had been treated at the emergency room several times for fractures and the CYS had performed cursory investigations after repeated incidents of abuse; one sibling ultimately died after his mother suffocated him. The court affirmed the trial court's order sustaining the preliminary objections on the grounds that the individual CYS employees were immune from suit because the allegations did not state a claim that any of the individual employees acted with the specific intent to injure plaintiffs. Id. at 1253. There, the court noted that the trial court had stated the following:

> [A] fair reading of the factual allegations regarding the Defendants' conduct,

11

  and the reasonable inferences to be drawn therefrom if believed, do not support a conclusion that any of the individual defendants acted with malignant feelings or a wicked disregard of the interests of the minor plaintiff. Nor do they support a conclusion that any such defendant acted with an intent that the minor plaintiff be injured, or with an awareness that his injuries were substantially certain to occur. At most, the complaint presents a series of events in which an error of judgment by a defendant in failing to recognize an unusual. . . disorder. . . resulted in the most tragic of consequences.

  Robbins, 802 A.2d at 1253, citing Diaz v. Houck, 632 A. 2d 1081, 1085 (Pa. Comm. 1993). In the case at bar, the plaintiff has not clearly alleged that the acts of the employee caused the injury and that such acts constituted a crime, actual fraud, actual malice or willful misconduct. Plaintiffs have alleged a serious error in judgment and negligence, rather than a specific intent to harm. We will therefore grant the individual ECOCY employees' motion to dismiss on the grounds that they enjoy immunity from these tort claims.

Opinion dated September 28, 2006 (Doc. 54) at 33-35 (emphasis added). Our Order dismissed the count of the original complaint which encompassed plaintiff K.B.'s claims and plaintiff-parents' claims for intentional infliction of emotional distress.

  The defendants argue that our prior dismissal of the intentional infliction of emotional distress claims was a final judgment on the merits and involved the same claims and the same parties, and therefore, were not properly re-asserted in the First Amended Complaint. We note that in their decision on appeal, the United States Court of Appeals for the Third Circuit appears not to address any state law claims when it states that "[t]he Bryans argue that the District Court erred in dismissing ***their 42 U.S.C. § 1983 claim*** and that the ECOCY violated their Fourteenth Amendment right to substantive due process . . . *[i]n civil rights cases*, generally, district courts must *sua sponte* extend plaintiffs an opportunity to amend before dismissing a complaint, even if they had counsel and did not request it." Not Precedential Opinion dated August 18, 2008 (Doc. 63) at 4 (citations omitted) (emphasizing that "in ***ordinary civil litigation [as opposed to civil rights litigation]*** it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint.") Nevertheless,

12

the Third Circuit vacated the entire order dismissing the original complaint in this case, and did not comment on the merits of any of the claims in the original complaint. We will err on the side of caution and assume that we are to consider all of the allegations in the First Amended Complaint anew, rather than limit plaintiffs' theory of recovery to the § 1983 claim, as defendants argue.

Count II now alleges that "[t]he Defendants, by engaging in the foregoing extreme and outrageous conduct, did intentionally and/or recklessly cause the Plaintiff K.B. to sustain severe emotional distress." First Amended Complaint ¶ 54. When this allegation is read in conjunction with the other allegations in the complaint, including that defendant Renie Skalko had knowledge that J.O. might hurt a child because he had done so before and that he was a danger to other children, and that she and Cindy Baxter deliberately misrepresented J.O.'s history to the Bryans and falsified documents, the plaintiffs have stated a claim for which relief can be granted. We must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant. Weston, 251 F.3d at 425. The statutory immunity available to ECOCY and its employees under the PSTCA may not apply if it is ultimately shown that their actions were "intentional conduct whereby the actor desired to bring about the result that followed, or at least it was substantially certain to follow, so that such desire can be implied." Robbins, 802 A.2d at 1252-53. The defendants aptly note that certain Pennsylvania statutes may restrict the release of confidential information in written reports, and this could very well be a legitimate reason not to fully disclose all of J.O.'s record to the Bryans. However, the parties can pursue their respective positions through discovery and, if necessary, we will revisit this important issue should there be a summary judgment phase.

Accordingly, Count II will not be dismissed.

### IV. Conclusion

For the reasons stated here, the motions to dismiss will be denied. An appropriate order will be entered.

Date: *May 13, 2009*

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.

13